## ESTATE OF DANIEL T. MURPHY, DECEASED.

[No. 4,313; decided October 23, 1886.]

Account of Executor—Objections to Expense of Lease.—Upon the settlement of the account of an executor containing items of expenditures in executing a lease under authority of the will, which items the heirs contest on the ground of the invalidity of the lease, the court will not consider the lease invalid.

Executor—Renunciation of Compensation.—The fact that an executor at one time entertained and expressed an intention to renounce his commissions does not bar his right to claim them if he has made no renunciation in writing nor made any agreement prior to appointment to waive compensation.

Executor—Liability for Interest on Funds.—An executor who withdraws funds from the capital account of a firm of which the testator was a member, and permits them to lie idle in a bank, is chargeable with interest thereon.

Account of Executor—Expense of Repairs.—Where an executor, as an inducement to the heirs to join with him in the execution of a lease, represents to them that the expense of alterations and fitting up for the tenant will not exceed a certain sum, he cannot be allowed for expenditures beyond that sum.

Account of Executor.—Expenditures that do not Add to the Rental Value of premises to be leased, and injudiciously made, should be disallowed.

Fixtures.—The Question as to What are or are not "Fixtures" depends for its determination upon the circumstances of the construction and intended use of the articles.

Daniel T. Murphy died on June 3, 1885, in the city of New York, of which place he was a resident at the time of his death, leaving an estate in San Francisco, California. He left a will, bearing date May 15, 1883, and two codicils, dated respectively May 18, 1885, and May 23, 1885.

On the eighth day of June, 1885, the will and codicils were filed, together with a petition for their probate, and for the appointment of John T. Doyle and Adam Grant, two of the nominees of the testator, as executors. The applications were granted on June 19, 1885, and the executors named duly qualified.

On November 6, 1885, John T. Doyle tendered his resignation as one of the executors, and, after the settlement of his account, he was discharged; Adam Grant continuing as sole executor.

During his lifetime Mr. Murphy began the erection of a building of great value on the corner of McAllister, Jones and Market streets in San Francisco, the lower floors of which it was intended should be occupied by the firm of Murphy, Grant & Co., a wholesale house of which he was a member, as a retail store. Shortly before Mr. Murphy's death, however, one of the members of the firm mentioned died, and Mr. Murphy being seriously ill in May, 1885, and this building being then still unfinished, and the purpose of the firm to occupy it having been abandoned, the decedent executed the codicil of May 18, 1885, in which he gave his executors the power to complete the building, and to modify the original plans, if necessary, and also to lease it for the term of five years.

Mr. Grant, as sole remaining executor, leased the lower portion of the building, first the western, and then also the eastern part, to the firm of J. J. O'Brien & Co., for five years, and covenanted for the fitting up of the premises to

suit the purposes of the business of the tenants. Upon the representations of the executors as to the advantages to be derived from the lease, the devisees of the property joined in it for a further period of five years. The executor also represented to the heirs that the expense of altering the premises for the use of J. J. O'Brien & Co. would not exceed $12,000 (instead of that it amounted to over $20,000) and that the expense of fitting up a "parlor" would not exceed more than $4,000.

Previous to the execution of this lease negotiations were pending with other persons for the leasing of the premises upon terms which some of the heirs thought more advantageous, but acting upon the representations, among others, of the executor (who was a member of decedent's firm, which firm was in the same line of business at wholesale as that of J. J. O'Brien & Co. at retail), that the firm, in which the estate had an interest, would profit thereby, the lessors closed the transaction with Mr. O'Brien.

The executor, thereafter finding that his position as such conflicted with his interest as a surviving partner in the firm of Murphy, Grant & Co., filed his account and tendered his resignation.

During the negotiations for the O'Brien lease Mr. Grant intimated to the heirs that he would charge no commissions as executor.

The heirs contested the items of his account relating to the fitting up of the leased premises, claiming that the lease was invalid, on the grounds that better terms could have been obtained from other parties, and that the executor was bound to the highest degree of care, diligence and prudence; also, that the expenses of fitting up the premises for the occupation of J. J. O'Brien & Co. were too high, and the improvements made for their benefit unusual on the part of a landlord, and not "fixtures"; that the expenses were much greater than the executor had represented to the heirs that they would be, and that he misrepresented certain facts to them; further, that as a member of the firm of Murphy, Grant & Co., the executor was interested in giving Mr. O'Brien the

preference, and that as remaining executor he had no power to execute the first five years lease alone.

It was also claimed that he had waived his commissions as executor, which he asked to be allowed him in his account, which waiver was one of the inducements to the heirs for entering into the lease.

It also appeared that the executor had withdrawn the sum of $100,000 from the capital account of Murphy, Grant & Co., and out of the same had paid a debt of the estate of some fifty-odd thousand dollars owing to Donohue, Kelly & Co., and had deposited the balance with these bankers, where it was lying idle, and the heirs sought to charge him with interest on this balance.

Jarboe, Harrison & Goodfellow, for executor.

McAllister & Bergin, for contesting heirs.

COFFEY, J. On the 26th of March, 1886, Adam Grant, desiring to retire from his office as executor, filed his report and account; on the 10th of April, 1886, Anna L. Murphy, widow, and Helen and Fannie Murphy, daughters of decedent, filed exceptions to said account, and on the 17th of April, 1886, they filed a supplemental and additional objection. Isabella Murphy, another daughter of decedent, on the said last-mentioned dates, filed in her own behalf separate exceptions and supplemental exceptions to said account. The matter came up for hearing on the 17th of April, 1886, and occupied, from time to time, until August 28, 1886, when, after argument, it was submitted for the consideration and decision of the court. The testimony is comprised in a volume of six hundred and six typewritten pages, which the court has considered.

I cannot undertake to do more than to state the results of my reflection upon the evidence and arguments.

The objections and exceptions to the account as a whole are overruled and denied.

Whatever may have been the inducements which caused the contestants to execute the ten years lease, this court cannot here treat that instrument as invalid.

While the executor admits that at one time he entertained and expressed the intention to renounce his commissions or to make no claim therefor, he insists that he changed his mind, and now demands as his due the statutory allowance.

I do not perceive any way in which, under the circumstances of this case, the court can deny to the executor what the statute allows him. I find no case sustaining counsel's view—the Estate of Davis, 65 Cal. 309, 4 Pac. 22, 3 W. C. R. 61, was a case where the renunciation was made in consideration of the appointment—a promise made before the appointment that the appointee would not charge. Schouler says: "If one has been appointed on a distinct understanding with those interested to serve as executor or administrator without recompense . . . . he must abide by his engagement": Schouler on Executors, sec. 545.

That is not this case. Adam Grant made no stipulation or agreement prior to his appointment, nor has he renounced in writing (section 1616, Code Civ. Proc.) his claim to compensation; but he insists that, notwithstanding his declared intention at one time, he has now a strictly legal right to commissions. The statute says (section 1618, Code Civ. Proc.) he must be allowed commissions upon the amount of the estate accounted for by him.

The court finds that the executor has not waived or renounced his commissions, and that he is entitled to them— the amount to be ascertained hereafter.

The executor is chargeable with interest on the balance of the money withdrawn from the capital account of Murphy, Grant & Co., which has been lying idle on deposit in the bank of Donohoe, Kelly & Co. This balance is the difference between the amount necessary to discharge the Donohoe debt and the amount drawn out of the capital account.

It is clear to the court that all expenditures in fitting up the store for the occupancy of O'Brien & Co. in excess of twelve thousand dollars, and all outlay in and about the "parlor" beyond the sum of four thousand dollars, should be disallowed.

The lowering of the skylight was not indispensable to the enjoyment of the premises by the tenants of the first floor,

as sufficient light might have been had by placing a glass roof over that part of the store now covered by the skylight, so the architect, Percy, testifies. I do not think, from my own observation when in company with the counsel for the respective parties, that the lowering of the skylight was judicious. It certainly has not added to the rental value of the second floor. It should be disallowed.

With reference to the mirrors and stools, while ordinarily they might not be regarded as "fixtures," I think that under the evidence in this case they must be so considered. For the purposes of the business to which the premises are devoted, the stools are about as necessary as the counters, and the testimony is that the space occupied by the mirrors had to be filled, and the cost would have been no less if paneling had been inserted.

All items not mentioned in this memorandum are allowed.

---

An **Executor or Administrator**, like any other trustee, may waive or renounce his right to compensation for performing the duties of his trust: Noble v. Whitten, 38 Wash. 262, 80 Pac. 451; Estate of Field, 33 Wash. 63, 73 Pac. 768; and a promise by him to the person primarily entitled to the administration of the estate, before his appointment, that he will not charge for his services, is equivalent to a renunciation of his claim: Estate of Davis, 65 Cal. 309, 4 Pac. 22. A waiver of commissions in a petition for letters of administration does not deprive the administratrix of the right to commissions, where the waiver was without objection, and by leave of court withdrawn before she was appointed: Estate of Carver, 123 Cal. 102, 55 Pac. 770.

**Executors, having Improperly Withdrawn Money** from the estate to pay a bookkeeper, were held liable for interest thereon at the legal rate until it was repaid to the estate, in Estate of Scott, 1 Cal. App. 740, 83 Pac. 85. For a further consideration of the liability of executors and administrators for interest on funds belonging to the estate, see Ross on Probate Law and Practice, 702-704.